**IN THE SUPREME COURT OF THE STATE OF IDAHO**

**Docket No. 44123**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | **Boise, November 2016 Term** |
| | ) | |
| v. | ) | **2016 Opinion No. 151** |
| | ) | |
| JAMES W. CLARK, | ) | **Filed: December 21, 2016** |
| | ) | |
| Defendant-Appellant. | ) | **Stephen W. Kenyon, Clerk** |
| _____ | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Gerald Schroeder, Senior District Judge; Hon. Kevin Swain, Magistrate Judge.

The decision of the district court is affirmed.

Alan Trimming, Ada County Public Defender, Boise, for appellant. Adam C. Kimball argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent. Ted S. Tollefson argued.

_____

PER CURIAM

This case comes to the Idaho Supreme Court on a petition for review of an Idaho Court of Appeals decision. James Clark was charged with misdemeanor trespass in the Idaho Industrial Commission office in Boise. At the close of the State's evidence at trial, Clark moved for a judgment of acquittal, which the court denied. The jury found Clark guilty and he appealed to the district court. The district court affirmed the denial of the acquittal motion and upheld the jury verdict. The Court of Appeals reversed, finding that the judgment of acquittal should have been granted. The State sought, and we granted, review.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

In August 2012, Mindy Montgomery, the director of the Industrial Commission, sent a letter to Clark stating:

1

> In light of the repeated disruptive arguments and confrontations you have exhibited toward employees of the Idaho Industrial Commission while on Commission property, you are hereby notified that you are, effective immediately, **barred from entering into or upon property occupied by the Idaho Industrial Commission**.
>
> Unless this bar is lifted earlier, your entry upon Commission property or into facilities occupied by the Commission at any time during the next twelve (12) months will constitute a trespass under the provisions of Idaho Code § 18-7008, paragraph 8.

Clark admitted receiving the letter. Montgomery testified she was authorized to send trespass letters and supported this claim by describing her position, responsibilities, and experience.

Montgomery sent an identical letter to Clark in August 2013, barring Clark from entering Industrial Commission properties for one year, until August 2014. Montgomery sent this letter to Clark using the facsimile number and mailing address on file for him. A fax confirmation sheet indicated that the letter went through to the facsimile number. With regard to the posted letter, the Industrial Commission did not receive any "return to sender" or other correspondence indicating that the mailing address was incorrect or that the letter had not been received by the addressee. While Clark denies receiving the second letter, a video posted to YouTube on September 25, 2013, nearly a month after the 2013 letter was sent, shows Clark holding up a letter from the Industrial Commission while saying, "I just received another one, also."

On April 4, 2014, Clark entered the Industrial Commission's office in Boise and approached the front reception desk. At the time, Barbara Fox was working at the front reception desk as a customer service representative. She testified that she was authorized to ask people to leave the Industrial Commission premises. When approached by Clark, Fox reminded Clark he was banned from the property and directed him to leave. Fox showed Clark both the 2012 and 2013 letters barring him from Industrial Commission property. When Clark refused to leave, Fox told Clark she would push the police button located under her desk if he did not leave. Clark told Fox to push the button, which she did, activating the emergency alarm. Boise police officers were dispatched to the Industrial Commission to respond to the alarm. Clark remained in the building in the reception area for approximately five minutes until police officers arrived and then left the Industrial Commission to speak with the officers. Clark was charged with misdemeanor trespass pursuant to Idaho Code section 18-7008(8).

2

At the close of the State's case at trial, Clark made a motion for a judgment of acquittal pursuant to Idaho Criminal Rule 29 ("Rule 29 Motion"), arguing the State failed to prove the trespass orders were made by an authorized agent and that Clark had been deprived of his due process right to petition the government for redress of grievances. The magistrate disagreed, finding there was sufficient evidence for a reasonable jury to find the Industrial Commission employees were authorized agents. The jury found Clark guilty of misdemeanor trespass. Clark appealed to the district court, which affirmed his conviction. Upon further appeal, the Court of Appeals reversed. The State timely petitioned this Court for review.

## II.
## ISSUES ON APPEAL

1.      Whether the district court erred in affirming the denial of Clark's motion for a judgment of acquittal.

2.      Whether Clark's due process rights were violated.

## III.
## STANDARD OF REVIEW

"When reviewing a case on petition for review from the Court of Appeals this Court gives due consideration to the decision reached by the Court of Appeals, but directly reviews the decision of the trial court." *State v. Lute*, 150 Idaho 837, 839, 252 P.3d 1255, 1257 (2011). When reviewing a decision of a district court sitting in its appellate capacity, we do not review the decision of the magistrate court. "Rather, we are procedurally bound to affirm or reverse the decisions of the district court." *Bailey v. Bailey*, 153 Idaho 526, 529, 282 P.3d 970, 973 (2012).

The trial court may enter a judgment of acquittal pursuant to Idaho Criminal Rule 29 only if the court finds the evidence "insufficient to sustain a conviction of such offense or offenses." I.C.R. 29(a). "In reviewing the denial of a motion for judgment of acquittal, the appellate court must independently consider the evidence in the record and determine whether a reasonable mind could conclude that the defendant's guilt as to such material evidence of the offense was proven beyond a reasonable doubt." *State v. Mercer*, 143 Idaho 108, 109, 138 P.3d 308, 309 (2006).

> The relevant inquiry is not whether this Court would find the defendant to be guilty beyond a reasonable doubt, but whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."

3

*State v. Adamcik*, 152 Idaho 445, 460, 272 P.3d 417, 432 (2010) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

## IV.
## ANALYSIS

**A.** **The district court did not err in affirming the denial of Clark's motion for judgment of acquittal.**

It is a misdemeanor offense for a person "who, being first notified in writing, or verbally by the owner or authorized agent of the owner of real property, to immediately depart from the same and who refuses to so depart, or who, without permission or invitation, returns and enters said property within a year, after being so notified." I.C. § 18-7008(8). Clark focuses his argument on the "authorized agent" language in the statute, claiming that neither Fox nor Montgomery was authorized to provide the notification barring him from the premises. However, both Montgomery and Fox testified that they were authorized to ask people to leave the Industrial Commission building. It does not stretch credibility to think that the director of a state agency and the front desk receptionist of the agency would be endowed with such authority. Clark presented no evidence to show that neither had such authority.

Clark testified that he received the August 2012 trespass letter but denied receiving the August 2013 letter. Montgomery testified that she sent the August 2013 letter to Clark both by fax and regular mail. The State introduced video evidence of Clark holding up a letter from the Industrial Commission while saying, "I just received another one, also." Although there was conflicting evidence on this point, a reasonable mind could certainly have determined that Clark received the August 2013 letter. But, whether Clark received the August 13 letter is not particularly relevant to the Rule 29 Motion or the guilty verdict because the jury found that Clark violated the statute by "refusing to leave immediately when told to depart."[1]

The State presented competent evidence that Clark refused to depart from the Industrial Commission building after first being notified verbally by an authorized agent of the owner of the Industrial Commission building to immediately depart from the building. The State was not required to prove, as an element of the offense, that Clark's constitutional rights were not

---

[1] The verdict form gave the jury three options for a guilty finding: (1) "entering property within one year of being notified he was banned," (2) "refusing to leave immediately when told to depart," or (3) both grounds. The jury selected the "refusing to leave" option. In light of the jury's finding, the only relevance of the two trespass letters is that they put Clark on notice prior to April 4, 2014, that he was barred from entering Industrial Commission property because of his past confrontations with Commission employees.

violated. A rational jury could certainly have found the essential elements of the crime beyond a reasonable doubt. Therefore, the district court properly affirmed the denial of Clark's Rule 29 Motion.

**B.      Clark failed to show a violation of his due process rights.**

Clark contends that his due process rights were violated in two respects. First, he claims that the Industrial Commission's agents, Montgomery and Fox, were not authorized to issue trespass orders and, therefore, their orders were not valid. Second, he contends the trespass orders infringed on his fundamental right to petition the government for redress of grievances without affording him due process.

In support of his first argument, Clark cites a decision of the Oregon Court of Appeals, *State v. Koenig*, 242 P.3d 649 (Or. App. 2010). In *Koenig*, the defendant was arrested when he entered a county public services building after he had received an order excluding him from the building. *Id.* at 653–54. The Oregon trespass statute requires that in order for a defendant to unlawfully trespass on "premises that are open to the public," the defendant must be "lawfully directed not to enter the premises." *Id.* at 655. The Oregon court concluded, based on Oregon precedent, that the "lawfully directed" phrase "contemplates inquiries into the lawfulness of the direction that go beyond the delegated authority of the person to issue the direction. *Id.* at 656. Those inquiries may include whether the order complied with particular constitutional provisions." *Id*. The court concluded the state was required to prove that the notice of exclusion did not run afoul of the defendant's right to a process through which he could challenge it. *Id.* Clark contends that the Oregon "lawfully directed" language is similar enough to Idaho's "authorized agent" language to require that he be afforded the same due process right.

There are substantial differences between the Oregon and Idaho statutes. The Idaho statute does not contain a separate provision pertaining to trespass on premises that are open to the public, nor does it contemplate inquiries into the lawfulness of the exclusion order that go beyond the delegated authority of the persons who can issue such an order. More importantly, because Idaho has case law directly on point, there is no need to consider out-of-state decisions.

The State asserts it was not required to prove that Clark was given due process to challenge the trespass orders. The State contends that this Court's decision in *State v. Korsen*, 138 Idaho 706, 69 P.3d 126 (2003), is controlling. In that case, Korsen entered a regional office of the Idaho Department of Health and Welfare to discuss his child support obligations. *Id*. at

5

710, 69 P.3d at 130. When the discussion grew loud, the regional director of the department asked Korsen to leave. Korsen refused to leave, the police were called, and Korsen was arrested on a charge of trespass under Idaho Code section 18-7008(8). *Id.* At the close of the State's evidence at trial, the magistrate dismissed the charge, finding the statute void for vagueness as applied to public property. *Id.* The magistrate ultimately granted Korsen's Rule 29 Motion, concluding that the state failed to prove Korsen did or said anything to justify the request to leave the premises. *Id.* On appeal, the district court affirmed on void-for-vagueness grounds and on the alternate ground that "the statute constituted a power of censorship and prior restraint of First Amendment activities and impermissibly allows individuals to be ordered off public premises merely because they express opinions of which those in charge of the property disapprove." *Id.*

On appeal to this Court, we reversed the district court's holding and vacated the magistrate's order dismissing the charge. *Id.* at 718, 69 P.3d at 138. The Court observed:

> [Idaho Code section 18-7008(8)] makes no distinction between private and public property. Furthermore, the statute informs the public of the prohibited conduct, that is, remaining willfully on property belonging to another after having been asked to leave. Therefore, the statute gives fair notice of the conduct that is made criminal by the statute.

*Id.* at 713, 69 P.3d at 133. Therefore, we concluded that the statute is not unconstitutionally vague.

The Court then addressed the First Amendment claims raised by Korsen, stating: "[a]ssuming that a criminal trespass prosecution is filed pursuant to I.C. § 18-7008(8) against a person on public property who is exercising his or her free speech rights, the statute could be attacked as applied to that constitutionally-protected conduct." *Id.* at 715–16, 69 P.3d at 135–36. However, the Court found that the facts of Korsen's case did not provide a situation where the exercise of free speech was impinged:

> Rather, Korsen showed up at the Health and Welfare office to conduct legitimate business, *i.e.*, to discuss his child support obligation with the agency charged with overseeing collection of child support. When it appeared that his desire to obtain modification of the obligation could not be obtained at that office but, as he was informed, was a matter that properly should be addressed to the court where the obligation was established, the purpose of his visit to the Health and Welfare office came to an end.

*Id.* at 715, 69 P.3d at 135.

6

Clark's situation is almost identical to that of Korsen. During his trial, Clark testified that he went to the Industrial Commission "based upon an opinion of the Supreme Court." The following exchange then occurred:

> Q.    [Prosecutor] And you wanted them to know about that opinion; is that right?
>
> A.    [Clark] No, I wanted to go and have him correct it—correct the wrongs based upon the Supreme Court's opinion.
>
> Q.    And you wanted them to correct those wrongs by going into the Industrial Commission on April 4th, 2014; is that correct?
>
> A.    Correct, because it's the only place that you can have those—have it fixed because that's where the records are held because it's been as a court from my understanding.
>
> Q.    And you were going to do anything to make sure those corrections were made; is that correct?
>
> A.    No, I wasn't just going to do anything. No, I went there to have it done with documents. I had documents in my possession to have them removed because I could show it, that those—you know, that those statements needed to be removed because of the documents that I have shows that those documents— those statements are lies.
>
> Q.    Okay. And you wanted the Industrial Commission to know that; is that correct?
>
> A.    Right. When you put my—when my family members are involved here.

Thus, Clark, like Korsen, entered the governmental office to seek corrections based on a Supreme Court opinion and not to exercise First Amendment rights, such as redressing a grievance with the Industrial Commission. Like Korsen, he was seeking relief that could only be provided through the courts. There is no evidence in the trial court record showing that the purpose of Clark's visit to the Industrial Commission on April 4, 2014, was to exercise any First Amendment right.[2]

---

[2] Fox indicated in her trial testimony that Clark was at the Industrial Commission to deliver a letter. She responded "yes" when asked on cross-examination: "When Mr. Clark came to the Industrial Commission on April 4th, did he have a letter he wanted to submit to the commission?" The contents of that letter were not disclosed at trial. The focus of the trial was whether or not Clark received the 2013 trespass order. Other than the testimony identified in this opinion, Clark's counsel failed to present any evidence as to what constitutional right, if any, Clark may have been trying to exercise when he entered the Industrial Commission building. In counsel's closing argument to the jury, there was no mention of Clark seeking to vindicate a constitutional right. The argument was directed toward the issue of whether Clark received notice of the trespass order.

The *Korsen* Court further found that the magistrate judge erred in granting Korsen's Rule 29 Motion.[3] *Id.* at 716, 69 P.3d at 136. The Court observed that the magistrate had granted the motion based on the State's failure to prove that the director gave Korsen a reason for asking him to leave the premises. *Id.* The Court stated that the magistrate "as a result of legal error, determined that the government could not prove a fact that is not necessary to support a conviction." *Id.* In this case, Clark contends that his Rule 29 Motion should have been granted because the State failed to prove that the request for Clark to leave the premises did not violate his constitutional rights. That is not an element of the offense so the State had no obligation to address the issue.

Subsequent to this Court's decision in *Korsen*, the Court of Appeals had an opportunity to address a similar fact situation in two cases involving Christopher Pentico. In the first case, *State v. Pentico*, 151 Idaho 906, 265 P.3d 519 (Ct. App. 2011) (*Pentico I*), Pentico was convicted of trespass pursuant to Idaho Code section 18-7008(8) for visiting the Governor's temporary office in the Borah Building on April 2, 2008, after having been notified the week before that he was no longer authorized to be at that location. *Id.* at 909, 265 P.3d at 522. Pentico claimed that the statute impinged on his constitutionally protected conduct. *Id.* at 914, 265 P.3d at 527. The Court of Appeals responded:

> In *Korsen*, the Idaho Supreme Court concluded that Idaho's trespass statute is not aimed at regulating speech or communication in any form. *Korsen*, 138 Idaho at 715, 69 P.3d at 135. Further, the as-applied analysis requires an examination of the statute as it applied to Pentico's particular conduct on April 2 and the facts of this case do not provide a situation where the exercise of free speech was impinged. On April 2, Pentico went to the Governor's office on the third floor of the Borah Building to deliver a letter. After Pentico delivered the letter, the purpose of his visit to the Governor's office came to an end. After leaving the Borah Building, Pentico was cited with trespass for his conduct of visiting the building, not for the content of any communication. Additionally, physical presence, even in a public building dedicated to public uses for the purpose of communicating ideas, is not "pure speech" and may not be protected by the First Amendment. *Korsen*, 138 Idaho at 715, 69 P.3d at 135. Accordingly, because the statute, as applied, did not regulate constitutionally-protected conduct and Pentico was cited for trespass because of his conduct of visiting a public building on April 2 in violation of the notice banning him from that building and not the content of

---

[3] The *Korsen* Court went on to hold that the magistrate's dismissal pursuant to Rule 29 "did not constitute an 'acquittal' necessary to trigger the double jeopardy prohibition," so that retrial was not barred. *Id.* at 718, 69 P.3d at 138. However, this holding was subsequently abrogated by the U.S. Supreme Court's opinion in *Evans v. Michigan*, 133 S. Ct. 1069 (2013). The *Evans* decision did not affect any aspect of the *Korsen* case that is applicable here.

any communication, the statute was not unconstitutionally overbroad as applied to Pentico on April 2.

*Id.* The Court of Appeals' analysis is correct and it applies equally here. Clark had no constitutional right to remain on the Industrial Commission premises after he was asked to depart, and the request to depart was not made for the purpose of limiting his right to speak or to seek redress of his grievance with the Supreme Court's opinion.

*Pentico II—Pentico v. State*, 159 Idaho 350, 360 P.3d 359 (Ct. App. 2015)—was a post-conviction case involving the same fact situation as *Pentico I*. Again, Pentico claimed that his First Amendment rights were impinged when he was arrested for attempting to obtain redress for his grievances against the government. The Court of Appeals held

> that it was Pentico's nonexpressive conduct—his entry into the third floor of the Borah Building after receiving notice that he was no longer authorized to be there—not his speech, for which he was punished as a trespasser. Accordingly, Pentico's First Amendment rights were not infringed when he was charged with trespass for entering the third floor of the Borah Building to petition the government for redress of his grievances.

*Id*. at 355, 360 P.3d at 464. Again, the Court of Appeals correctly analyzed the issue in *Pentico II* and the same reasoning applies with respect to Clark's First Amendment claim.

The State finally argues that Clark's argument can be distilled down to a claim that the State was required to prove his constitutional rights were not violated in order to sustain the conviction for trespass. However, "[t]o prove a statute is unconstitutional 'as applied,' the party challenging the constitutionality of the statute must demonstrate that the statute, as applied to the defendant's conduct, is unconstitutional." *State v. Cook*, 146 Idaho 261, 262, 192 P.3d 1085, 1086 (Ct. App. 2008) (citing *Korsen*, 138 Idaho at 712, 69 P.3d at 132). Clark has failed to do so in this case.

**V.**
**CONCLUSION**

We affirm the decision of the district court.